Welcome to the fourth day of this panel sitting. We've had some variation in membership. Welcome our esteemed colleague Judge Davis to today's sitting. We have four cases on the morning. We'll see if we take them all or take some break at some point. The first case of the day, Jill Hines et al. v. Alex Stamos, 23-30916. Looks like Ms. Theodore gets to go first. Good morning. In light of the Supreme Court's decision in Murphy, there are now two independent reasons why the Court should vacate an order dismissal. First, the District Court lacked personal jurisdiction. And second, the plaintiffs lacked standing. If the Court concludes that there is personal jurisdiction and standing, it should reverse with instructions to stay the case pending arbitration. Given that personal jurisdiction is more fully briefed and that the Court can consider it before standing under Rergus, I'll start with personal jurisdiction, then standing, and then arbitration unless the Court prefers a different order. So as to appellate jurisdiction over the personal jurisdiction issue, this Court's decision in Daves v. Dallas County makes clear that if any threshold issue is a prerequisite to the District Court entering the order on appeal, the Court has appellate jurisdiction over that threshold issue even if the District Court did not address it. That's because, as the all-American check cashing case held, the Court of Appeals must consider all the legal issues necessary to dispose of the order being appealed. But the order, correct me if I'm wrong, in this case is an order under Section 16A of the Federal Arbitration Act. And the District Judge obviously didn't address personal jurisdiction, right? What is your best case, if you have one, for the proposition that in an interlocutory appeal where the judge does not even address an issue, let's say personal jurisdiction, that this Court can go ahead and can address it as opposed to sending it back, say, for example? Certainly. So in the Daves case, this Court specifically held, and that was an interlocutory appeal, and this Court specifically held that subject matter jurisdiction and personal jurisdiction and abstention were all fair game on appeal, and the Court addressed several jurisdictional questions that the District Court hadn't addressed and then sent abstention back for the District Court. So Daves is a good case. The Louisiana Fair Housing Action case also is the exact same posture that was in 1292B appeal, and the Court said that it was going to address standing and vacate on that ground even though the District Court hadn't addressed it. The Roman v. Auto Nation case that we cite in our supplemental brief is also such a case in the specific posture of an arbitration appeal. I didn't hear the name of the case. So I cited the Daves case, the Louisiana Fair Housing Action case, and the Roman v. Auto Nation case are all cases involving interlocutory appeals. Subject matter jurisdiction. So in the Daves case, specifically the Court said that personal jurisdiction and exhaustion, exhaustion of course is also waivable, were subject to this rule as well. The Court said that any issue that underlies the propriety of the order that the Court has an obligation to address it on appeal and has jurisdiction. Was there any reason to distinguish subject matter jurisdiction from personal jurisdiction as far as this question is concerned, appellate jurisdiction? I don't see how. I mean, the personal jurisdiction, as long as it's not waived, is just as much a prerequisite to the entry of an order as subject matter jurisdiction. I think the Supreme Court made that quite clear in Rergus. So I don't see any basis for distinguishing between the two things. I know you discussed the, both sides discussed the Halliburton case, and I noted in that case there's a distinction made, it may be in a footnote, but it's pretty emphatically made, that there's a distinction between personal jurisdiction for sort of general purposes and personal jurisdiction with respect to a motion to compel arbitration. So do we have to also address whether there is personal jurisdiction with respect to the, I believe your side made the motion to compel arbitration, right? Yes, Your Honor, and so what Halliburton says and what a number of this Court's cases have said is that if the arbitration clause that the defendants are moving under, specifically selects a forum for the arbitration, then the arbitration clause renders personal jurisdiction to the Court in that forum for the limited purpose of compelling arbitration. But the arbitration clauses at issue here do not select Louisiana, and so that's just irrelevant. The ordinary minimum contact analysis has to apply. But you moved to compel arbitration here, right? We moved to compel arbitration, but the defendant in Halliburton moved to compel arbitration and the Court didn't say that the mere motion to compel was what gave it, was what gave the District Court personal jurisdiction. It said that the fact that the arbitration clause selected that forum state. And, you know, in particular, so I think arbitration is a defense. Rule 12 makes quite clear that you don't waive a defense by moving simultaneously, or you don't waive personal jurisdiction by moving simultaneously to offer a defense or objection while also preserving your personal jurisdiction motion. We made all of these arguments and motions filed within minutes of each other. We specifically flagged personal jurisdiction in our arbitration motion. In Payne-Weber, the Court said that a defendant's request for an injunction to prevent an arbitration did not waive personal jurisdiction with respect to the arbitration issue. In addition, both Halliburton and Payne-Weber have said that in this circuit, the filing of a counterclaim, cross-claim, or third-party claim does not, without war, waive an objection to personal jurisdiction. And I think the defendants or the plaintiffs in this case have said that arbitration is like a counterclaim. We think it's not. We think it's a defense. But even if it's a counterclaim, filing a counterclaim does not waive personal jurisdiction. And let me also just say, this would be a really unfair rule, right? Because if you're sued, you have to raise arbitration immediately when you file your motion to dismiss or risk waiving it. And so it can't be the case that you have to choose between giving up your right to arbitration or giving up your constitutional right to have a court with personal jurisdiction decide arbitration. Thank you. All right. And so let me just touch briefly on the requirement to decide personal jurisdiction before arbitration. I think the cases we've been discussing make that completely clear. It can't be that an arbitration clause selecting a forum renders personal jurisdiction to the court for deciding arbitration if you don't actually need personal jurisdiction to decide arbitration. And also, this Fizzieri case from the Supreme Court, which says that when you decide arbitration, you're retaining jurisdiction, retaining personal jurisdiction, makes that completely clear. If we agree with you that the judge should have considered jurisdiction first, wouldn't we ordinarily remand that to him because personal jurisdiction is so fact-bound? Certainly, there's an option to do that. I think the court in a number of cases that we've cited in our brief has said that personal jurisdiction is a purely legal issue. It's review de novo. When it's clear on the existing facts, this court can decide it in the first instance. We think it would be appropriate to do that here given how clear it is that there's no personal jurisdiction. So let me just turn to that. First of all, every single allegation in the complaint that relates to personal jurisdiction talks about the defendants, not any particular defendant. And that alone requires dismissal. This court could write an opinion saying there's no personal jurisdiction just based on that one sentence alone. The Supreme Court said in the Rush v. Savchuk case that you can't aggregate contacts of defending parties. This court has held in the Guidry case that the plaintiffs need to make a prima facie case of personal jurisdiction as to each particular defendant individually and not as part of a conspiracy. And there just are no, no jurisdictional allegations that talk about any particular defendant. I happen to know, are those cases you just mentioned, were those on a 12-B stage? Were those at the pleading stage? Meaning we have to take the, you know, we have to take the allegations as true at the pleading stage, right? Certainly. I believe that Guidry may have been at a pleading stage. I'm not sure about the Rush v. Savchuk case. I can look it up and get back to you on rebuttal. But regardless, I mean, they haven't, we're happy to accept all well-pleaded factual allegations as true. Of course, we're doing that here. There are no factual allegations that are defendant-specific, and they need that at the motion-to-dismiss stage. But even putting that aside, the allegations that they offer as to sort of defendants writ large are insufficient. So the Virality Project and the EIP reports are incorporated into the complaint, and across hundreds of pages of those reports, there is no mention of Louisiana. And the complaint contains a lot of vague, over-generalized, conclusory assertions like about the defendants targeted Louisiana. But if you look at the actual factual content, none of it supports those inferences at all. So there's an allegation about communications with Louisiana at paragraph 382 that said, on information and belief, the defendants communicate with Louisiana government officials about the plaintiffs. But then the very next sentence identifies the purported factual support for that, which is an email they got in Discovery in Missouri v. Biden in which the Louisiana Secretary of State emails DHS about election disinformation. So nothing to do with any plaintiff in this case, nothing to do with any defendant in this case. It can't possibly support personal jurisdiction. And the only other actual fact they allege is at paragraph 377 of the First Amendment complaint where they allege that the EIP, and that's important, that it's EIP, assigned an analyst to each state, and that if an EIP ticket targeted a particular region, then the analyst would send it to the EIISAC, which is a nonprofit group to share with a relevant election official. But first of all, there's no factual allegation that any EIP ticket did target Louisiana, which is not surprising because the EIP was focused on swing states. And in any event, a hypothetical EIP communication with Louisiana couldn't possibly be related to any plaintiff's claim in this case because the EIP was the election-focused project, and the only Louisiana plaintiff, which is Jill Hines, alleges censorship of COVID speech. And there's no allegation that the Virality Project, which is the COVID project, assigned any analyst to do anything with respect to Louisiana. Let me ask you another question. What's your best case that says a motion to compel arbitration is a merits issue? Well, so I think that's the... I think that sort of whether or not it's a merits issue, the Halliburton case and the Payne-Weber case and the International Energy Ventures case and the Supreme Court's decision in Spizzeri make clear that when a court is deciding an arbitration motion, it is deciding to retain jurisdiction to oversee a case. And that is what takes it out of the Sinicam, Rogas, you know... For nonconvenience? Yeah, but it's different. It's different than an FNC motion because the Federal Arbitration Act requires the district court to retain jurisdiction. They're not dismissing the case. They're retaining jurisdiction to oversee it. And, you know, if they can't retain jurisdiction over something they don't have jurisdiction over and then you would go back to the court to confirm the arbitration award and it wouldn't have personal jurisdiction and it wouldn't be able to do that. So it just doesn't make any sense, which is why this court, again, has repeatedly held that you have to have personal jurisdiction to decide arbitration. And that's what the district courts in this circuit routinely do. And I'll also note that the court's cases like this Shirley v. MaxiCare case that says that you need subject matter jurisdiction to decide arbitration, the analysis can't be different under Rogas and Sinicam for personal jurisdiction and subject matter jurisdiction, right? Either arbitration is a threshold issue where the sequencing can be in any order or it's not. And if it's not something that can be decided for subject matter, before subject matter jurisdiction, which, again, the Shirley v. MaxiCare case definitively resolves, then it can't be decided before personal jurisdiction. Were we to agree with you in concept at least but decide, as maybe both colleagues have referenced, perhaps there are some relevant facts here that need to be looked at to the extent that standing is an issue and we have raised as well the distinctions from the Supreme Court opinion dealing with these same parties that might be made and have been made in the briefing. What, if we were to decide to remand rather than to decide it here, what would you have us, have the district court resolve? So, our submission, of course, is that we think the court can and should resolve personal jurisdiction. But if you disagree, we would suggest that you do exactly what you did in the Dave's case, which is, which I think, as you know, because you wrote that decision, there was a... I wrote a dissent in the finale. Go ahead. Talk about the one where I'm much more favorable. We would suggest that the court retain jurisdiction, do a limited remand to the district court to make some findings about personal jurisdiction and standing, and then once the district court has made those findings, the case would automatically return to this court to resolve the whole appeal. We think that would be the most efficient way to do things. It would be extremely inefficient and unfair to send the whole case back down and then have to do a whole other appeal. So that's what we would suggest if the court were inclined to do that, is retain jurisdiction and do a limited remand specifically directing the district court to address personal jurisdiction and standing. Do you say that we could decide the case on standing, given... And my question is, first, do you think we could do it under Murthy or we don't have the facts that Murthy had, because there's no record in our case, so could we decide it on standing? We think you could. So Murthy obviously is in a preliminary injunction posture, but it sets forth the legal requirements to the elements of standing in this kind of context. And so, you know, it's... The normal rule is that, you know, at the motion to dismiss stage, you have to plead the facts that will eventually establish standing. And so, you know, I think Murthy says that the plaintiffs have to... They approve here alleged facts showing specific causation with respect to each discrete instance of content moderation. It says the allegations can't treat the defendants and the plaintiffs and the platforms as a unified whole. They approve alleged facts showing that a particular individual defendant pressured a particular platform to censor a particular topic before the platform suppressed a particular speech on that topic. And then also they have to show that the censorship was inconsistent with the platform's exercise of independent judgment. And so I think the Court could quite easily take those standards and say that there is nothing remotely in this complaint that satisfies those standards. I mean, there's just nothing in this complaint that attempts to connect any discrete instance of content moderation with any particular communication by any particular defendant. I see my time has elapsed. I'm happy to continue if the Court has more questions or wants me to address arbitration or any other issue. We'll be happy to see you again on rebuttal. Thank you. Good morning, Your Honors. May it please the Court. I'm Michael Tallent and I'm representing Napolese, Jill Hines, and Jim Hoft in this arbitration appeal. And contrary to what happened over the last 15 minutes, this is solely an arbitration appeal. To touch quickly on the arbitration issues as a preview, as alleged in the First Amendment complaint, which is taken as true for purposes of this appeal,   appellants worked hand-in-glove with federal, state, and local officials to censor speech on social media platforms, including the speech of Hines and Hoft. Appellants now invoke equity to take advantage of an arbitration agreement between the social media companies they pressured and the users whose speech they censored to take this case out of federal court. This doctrine of equitable estoppel, this Court said in Westmoreland v. Sado, applies only in rare circumstances because it stands in significant tension with the fundamental principle that arbitration is a matter of consent, as a matter between the two parties, a principle the Supreme Court just resoundedly affirmed in Coinbase v. Susky. The District Court was therefore correct to deny appellants' unusual request. At core, this is not a contract case. This is a constitutional case. And in all event, the District Court did not abuse its discretion in denying appellants' request for equitable estoppel. Well, you do have one contract case, a state law case, of tortious interference in a contract. We do. You know, how can you have a tortious interference case without a contract? I mean, the contract's critical, isn't it? Well, Judge Davis, so the contract, so this gets, I think, to the question of reliance, and the case law is very clear that merely referencing the contract, reference is, I think, the language the Eleventh Circuit uses. The Supreme Court in Hill said matters touching on the contract are not enough to show reliance. The question there is whether liability is being imposed on appellants under the terms of the contract. And the main theory of the case, even as to the tortious interference of contract argument we're making, is that appellants significantly encouraged or coerced censorship. So it's a separate issue from whether Facebook or Twitter performed under the contract. It's logically separate. It's a separate issue from the Eleventh Circuit, where the court noted that in the context of tortious interference cases, the court has to be very careful and police the boundaries of equitable estoppel to ensure that strangers to the contract can't interfere with the contract and then take advantage of an arbitration agreement they didn't agree to, again, touching on that issue of consent. And I'll point out, again, it's an abuse of discretion standard here. So the district court, I think, was within its discretion to conclude that an arbitration agreement on this case does not turn on what the contract says. And given that, appellants, I think, understand kind of that that's a weakness in their equitable estoppel case, which is why they spent half their time on half of their substantive briefing essentially on personal jurisdiction, the supplemental letter brief on standing, and their entire opening argument here on those threshold issues that I think this panel has all asked questions related to are still pending in the district court. And because they're still pending in the district court, as this court noted in the All-American Cash Checking case, appellate jurisdiction doesn't let the court reach past the order on appeal, the arbitration order, to decide issues that are still pending in the district court. Well, we have a lot of case law out there. Yes. And you have to deal with the bad, too. We do have cases that talk about the issue being inextricably intertwined. I don't know if that's redundant or not. We have cases that certainly talk about whether at all times we must consider whether there is jurisdiction. If this plays out the way you want to, there's no determination on jurisdiction until after arbitration. Is that correct? In the context of this case? Yes, Your Honor. And so much as opposing counsel said, it comes back to judiciality, if I recall correctly whose case this is. And at that time, he's challenged, and the whole thing is basically mooted by a determination there's no jurisdiction. The arbitration... With his order compelling it, and so he can't confirm the arbitration. Well, so I think this gets to a fundamental misunderstanding on appellants' end regarding personal jurisdiction and standing in the context of the cases they cite. Their basic argument is that these are threshold issues. That's their argument in their briefs. It's a threshold... When they say threshold issue, I think they are conflating threshold issue for Hines and Hoff to bring their case as opposed to subject matter jurisdiction over the issue on appeal, which is arbitration. On this point, I think the Third Circuit's O'Hanlon case, which we cite in our supplemental letter brief, is very persuasive. It's an equitable estoppel case where the party moving for arbitration also tried to challenge standing. What the Third Circuit said there is that this court's interlocutory appeals jurisdiction is very narrow. That's well established. It's consistent with principles of finality. And so the subject matter jurisdiction issues that this court has to face, essentially its power to decide the discrete arbitration issue, is whether there is jurisdiction in the district, jurisdiction under the Federal Arbitration Act, and whether appellants have standing to meet this... have standing to appeal. Both of which I think are indisputably met here. We're not disputing that. The Third Circuit case is saying that it was okay for the court to decide formal inconvenience, but that it was not okay for the court to compel arbitration without deciding jurisdiction. So the... I think the question... and we are, I think, advancing a categorical rule. Our view is this inextricably intertwined standard. So the question would be, even in that context, whether the form question is inextricably intertwined with arbitration. I think there's a good argument kind of in the abstract. That's the case. This court has analogized arbitration agreements to form selection clauses. In terms of going back to the threshold issue, the Mi Familia Vota case, which was decided, I think, two or three weeks ago, held that appellant jurisdiction doesn't extend to standing as a threshold issue. It's factually distinct. The legal inquiry is distinct. And I think, you know... But that opinion said the court could not reach it. It seemed to me, maybe it wasn't clearly written, that it was saying the court was not exercising its discretion to reach it. I think that's part of it. And I think the discretionary element of Mi Familia... So two things on that. The discretionary element applies here because Mi Familia noted in that case that they had not been fully briefed in the district court and, in fact, could be affected by this court's decision in that case. I think we have a very similar factual analysis here. The standing decision, while briefed in the district court, may be affected by Murphy v. Missouri. And it hasn't been fully briefed before this court, despite the fact that appellants could have done that and they acknowledged that in their reply brief. They chose not to brief upstanding until their supplemental letter brief. So I think as a matter of discretion, this court being a court of review and not first view, it's appropriate to send it to district court. I also think the broader point of Mi Familia is that this threshold issue of standing is not something this court must address. To the extent it has flexibility or discretion to address it under pendant appellate jurisdiction, it has to be an issue that's inextricably intertwined. And this court has discretion not to reach that issue here. You know, we've gone a little broader than that in that Milder line of cases. So... We could entertain other issues other than the certified issue. At least we have jurisdiction to do it if it's fairly included in the appealable order. And that includes issues raised in the district court and briefed to us. And this case fully meets those standards, doesn't it? Well, first, not as to standing, which hasn't been briefed to this court. What about personal jurisdiction? So personal jurisdiction has been briefed to this court. It has to be taken in the context of the All-American Cash Checking footnote. Or the Milder has to be taken in the context of All-American Cash Checking, which says that undecided pending decisions in the district court are not properly before this court in terms of its appellate jurisdiction under a 1292... So under the order language of 1292B. I would also point out the Milder case, the issue there was a question of removal. And so the issue before the court was whether there was any hope of recovery under the relevant state law claim. And the Milder dealt expressly with whether recovery was possible. I think this is a consistent theme, by the way, in the cases they cite. Dave's they cite, I think it's consistent there because Dave's was addressing a threshold issue that it concluded that the district court hadn't addressed in its order because it had been pre-terminated by the circuit precedent that Enbonne Court was reviewing in that case. One of the cases involved an employment discrimination case where the district court didn't consider retaliation. And so on appeal, it met these standards I just mentioned. And so the court of appeals took it up. Well, I think so if that's a Louisiana Fair Housing case you're talking about, Judge Davis, that's a motion to dismiss. Motions to dismiss do carry with them or you can argue at least that standing is a threshold issue. I think we're getting now to what appellants have done which is conflate jurisdiction over the case versus jurisdiction over their appellant, their arbitration request. So standing, for example, in Murthy, standing is not dispensed in gross. It's claim and relief specific. The claim before this court is appellant's arbitration claim. We point out in our supplemental brief the Dupay-Bushing case. It's a counterclaim. To make a counterclaim, the defendant has to have a very specific claim. And so looking at it not in the broader context of the case itself, but in the context of this narrow arbitration case, they have standing because the question is whether appellants have Article III standing to argue for arbitration because that's a claim that they're seeking. For personal jurisdiction, the question is whether appellants have invoked, appellants have waived personal jurisdiction, not to the whole case. That's not our position here. The district court can still reach it. But whether they waive personal jurisdiction for the sole purpose of having the district court decide their request for arbitration. How did they waive it here? They didn't waive jurisdiction here, did they? They didn't waive it as to the entire case. They waived it solely for, it's like the Halliburton footnote. I think, Judge Duncan, you were discussing that. They waived it for the sole question of having the district court decide arbitration. They haven't waived it for purposes of adjudication of the claims and the first amended complaint that Hines and Hoft have brought. And I think, you know, they kind of recognize, I think, this issue. They mentioned their motion to dismiss. The motion to dismiss actually said that asked the court to split the analysis essentially into two categories. It split the analysis into merits-based. They say, this is on page 1390 of the record. This is a Stamos appellant's motion to dismiss. The Astman's motion to dismiss is very similar. They split it into the merits-based decision, which is a Rule 12b-6 motion. They expressly referenced 12b-6. And then they said they want that decided after everything else. So they lumped in arbitration with all their jurisdictional issues. And again, I would like to emphasize, our rule is actually, I think, very consistent with the flexibility that pendant appellate jurisdictions provide this court to decide issues inextricably intertwined. Their argument is solely that, well, the threshold issue that the court must address has been squarely rejected by the Third Circuit. And I think it's squarely rejected by the Mi Familia case as well. And a last thing I think I'll run through on this. They cite here, I've mentioned Dave's, I've mentioned Louisiana Fair Housing. I think the Roman case, Roman v. Auto Nation, and the Shirley case are entirely consistent with what the Third Circuit said in Hanlon. Both those cases involve appeals. The Shirley case was an appeal from a final judgment confirming an arbitration award. That final judgment carries with it literally everything, the entire record. It's not an interlocutory appeal, so it's not narrowly construed. The Roman case was considered the Federal Arbitration Act jurisdiction, which we agree this court can consider on its own motion, whether the Federal Arbitration Act grants subject matter jurisdiction over the arbitration motion and over this appeal. And that's what the Third Circuit said in its own Hanlon case. So these cases are all distinguishable. None of them stand for the proposition that an unrelated issue, unrelated both on the facts that are involved and on the legal analysis, this court can reach into the district court and decide an issue that hasn't been decided simply because it's a threshold issue. Last point on this, I just want to kind of, I think, correct the factual record. They say, and I think it highlights the fact that this decision needs, or this issue is appropriately decided in the district court in the first instance. In terms of personal jurisdiction, they argue, for example, that there's no allegations of connections between appellants and the state of Louisiana. I do want to point this court to paragraph 377 of the EIP, of the first amended complaint, which talks about the fact that the EIP assigned an analyst to specific states to look for misinformation and track down the origins of the suspected misinformation. The point here, I think, is not to delve into the facts, but to point out that we have alleged directed targeting, intentional targeting of the state of Louisiana by appellants. The directed targeting was meant to suppress speech made by Louisiana residents, like Ms. Hines, that would reach Louisiana residents, like the speech of Ms. Hines and Mr. Hoff. And under the authority of gruel, the intentional direction of a tort into a state is sufficient to attach personal jurisdiction. And in the posture this case is in, and the posture was mentioned also in the context of Murphy, Ms. Hines and Mr. Hoff get the benefit of all inferences alleged in the complaint. The allegation that the EIP and the VP, which are controlled, we allege are controlled by appellants, directed their activities into the forum state raises an inference, and that Ms. Hines and Mr. Hoff have been targets of misinformation, have made speeches in the categories of speech that the appellants consider misinformation, raises the inference that they've directed their conduct at Ms. Hines and Mr. Hoff, have raised the inference they've purposely availed themselves of the state of Louisiana, and raise the inference that there is standing in this case. But, again, this is an issue the district court can address and should address in the first instance. I mentioned we have touched a little bit, and I'm happy to answer any additional questions about that. See, I have four minutes. I just wanted to run through, I think, really quickly some of the arbitration issues. But, again, happy to discuss. So on the arbitration issues, real quickly, I would like to point out, I think there's, again, it's an abuse of discretion standard. It's a very high bar to establish reversal. And, moreover, this court has been very clear that the question of arbitration is in an, the question of equitable estoppel is facts intensive. It turns on the facts of each case. That's a hill case. One other threshold issue on this point, the reason we cite California law and Fifth Circuit law is because the Facebook terms of service incorporate California law. The Twitter terms of service incorporate federal common law. But California law and this court's law are essentially coterminous. There's a lot of cross-pollination between the two if you look at the cases. I want to address real quickly, I think, what we call the threshold issues, issues that this court can affirm the district court on without reaching the two bricks and factors or considerations. The first is the fact that Ms. Hines and Mr. Hoff don't sue a signatory to the contract. The district court held that under California law, Hernandez v. Meridian Management Services, there's no unfairness in letting a suit proceed when plaintiffs do not sue a signatory. Appellant's response to that is essentially that Hernandez is an incorrect statement of the law. The Soltero case that we provided the court in a 28-J letter two days ago, I think fully undermines that proposition, that Hernandez is indeed a valid statement of the law in this context. At a minimum, I think Hernandez and Soltero stand for the proposition that an individual who is suing non-signatories is not relying on the contract. In terms of the unclean hands argument, I think the appellants do not dispute that unclean hands could apply. What they say is the unclean hands argument here deals with the contract as a whole. That's what the cases they cite say. None of those cases deal with equitable estoppel, and the question in equitable estoppel is whether to expand the arbitration agreement to cover non-signatories to the contract. So the question inherently deals and is focused on the arbitration agreement, unlike, for example, a claim as to fraud in the contract as a whole. So that language in In re Lloyd's register about the unclean hands not applying where the fraud is unrelated to the applicability of the contract provision at issue is not present here. The unlawful acts of appellant relate directly to the arbitration agreement because that is what they argue brings them within the scope of that specific provision of the contract. Let me just ask you one question before you finish. On equitable estoppel issue, your complaint says that there was pressure applied. Well, I think you used coercion applied to platforms with the government to flag allegations. And in Grigson, coercion was included in the Interdependent Act. So what did you gain by calling it coercion? So I think, so two things. One, coercion, significant encouragement, is a test, is a constitutional test for liability, kind of going on to the reliance point. That is separate. That is separate from finding liability under the terms of service. That is, we don't need to establish a breach of the terms of service to establish liability in this context. That comes from Missouri v. Biden, the substantive portion of that decision. I'm looking at interdependence here. Yeah, the interdependence, Your Honor. So one, the interdependence, I bring up the contract because as the 11th Circuit noted. What I'm interested in is what did you gain by, how did you get out of interdependence by alleging coercion instead of cooperation? Well, so cooperation would be interdependent or be more likely to be interdependence. Again, I'm not going to say it is. The reason why coercion matters here is because as the 11th Circuit noted, even in the interdependence test, the sine qua non is always whether the plaintiff is relying on the contract. The coercion here is a step removed from the contract. It's coercion to try and censor speech, which is not coercion to try and breach the contract itself. So I think that's the difference here. Both turn on the fact that these claims don't rely on the terms of service. And in any event, this court in Hill noted that even if the second provision, second factor, that interdependence test may be met, that is not enough to show an abuse of discretion by the district court. There this court said, yes, interdependence may have been alleged here, but that's not enough to show an abuse of discretion. I think the last point on all this is something noted in Sokal, something noted in our brief. If alleging coercion, if alleging kind of pressure is enough to establish equitable estoppel, any time a third party engages in tortious interference, any time, frankly, the government regulates a counterparty to a contract, you can always have that pressure, always have that coercion. Equitable estoppel would then kind of swallow the rule of consent in arbitration. And strangers to the contract, who are in no way foreseeable parties, would be subject to that coercion agreement. I see my time is up. Happy to answer any other questions, but we would ask the court to affirm, and because we allege the censorship is ongoing, we would also ask for immediate release of the mandate. We put that in our brief. Thank you. Thank you. Let me just briefly touch on the arbitration issues. So Sokal is not the relevant law. The relevant law is Fifth Circuit law and California law. Grigson held specifically, as Judge Javis mentioned, that allegations of pressure and interference with the independent application of a contract satisfy the test for equitable estoppel. In the Goldman case, which is the leading statement of California law, there's a footnote, footnote 10, where that case also says that tortious interference is the quintessential example of where equitable estoppel should apply. With respect to their claim that they don't require, they're not required to allege a breach, it is an element of tortious interference with a contract that you have induced a breach, and as we explained in our supplemental brief in light of Murthy, Murthy makes completely clear that to prove this case on the merits, they are going to have to prove that the platforms were not acting consistently with the ordinary terms of their policies, and that establishes that equitable estoppel applies. With respect to the abuse of discretion issue, the district court did not actually apply the Grigson or Goldman test. It just said they allege they don't enforce the contract, so I'm not going to actually engage in the question of whether the factual allegations in the complaint establish either of the two tests in Grigson or Goldman. With respect to not suing a signatory, the Ninth Circuit's recent decision in Herrera v. Cathay Pacific makes completely clear that under California law that's not a requirement. They have not cited a single case under California law where on the one hand the elements of equitable estoppel were met, but on the other hand, a court said even though the elements are met, we're not going to apply equitable estoppel because you only sue the non-signatory, and in Grigson, this court said explicitly that you can't just avoid equitable estoppel by not suing the signatory. The Supreme Court said in Murthy that these cases depend on the platform's actions. So let me turn to the jurisdictional issues. So there's no getting around the Daves case and the Louisiana Fair Housing Action case. Both of those cases hold that this court is required in an interlocutory appeal to consider any jurisdictional issue that is what's a prerequisite to the district court's entering of the order on appeal even if the district court didn't consider it. The Third Circuit's O'Hanlon case that they cite is just inconsistent with this court's precedent. But I will note that the Third Circuit's Redding Health case makes clear that the district court is required, I think Judge Davis, you were mentioning this case, is required to decide personal jurisdiction before arbitration under Sinochem. It says that explicitly. With respect to the Mi Familia Voda case, that case is very easily distinguishable because the court said it didn't have jurisdiction to address the standing with respect to certain statutory claims because the statutory claims, the district court's order allowing those statutory claims to proceed was not on appeal because the only thing that was on appeal was the district court's sovereign immunity to determination with respect to the constitutional claims. So the court wasn't being asked to affirm or reverse the district court's opinion allowing the statutory claims to proceed in Mi Familia Voda. And that is why the district court, this court did not have to address standing. But the, the, the, the, the Davis and Louise... The decision was right? I'm sorry? The decision was right, do you think? In Mi Familia Voda? Correct, Your Honor. I think it was correct. Yes, absolutely. I don't remember. But, but it's not, it's, it's, it's not inconsistent with the clear holding in Davis and Louisiana Fair Housing Action that, that this court has to address any jurisdictional prerequisite to an interlocutory order where that order is on appeal. And that's, that's for the obvious reason this court can't affirm if the district court didn't have jurisdiction to enter the order. I'll also note that the, the Roman versus AutoNation case, that's in exactly this posture. It was, it was a defendant moved to compel arbitration the district court denied the motion to compel arbitration. The defendant appealed. It was an appeal under 16A. And this court vacated and ordered dismissal for lack of jurisdiction. And that's because, you know, as the, the court has held and the Supreme Court has held that the Federal Arbitration Act does not confer jurisdiction. So you have to look at whether there's jurisdiction in the underlying case. With respect to, with respect to personal jurisdiction, there was no response at all on the group pleading issue. And that's why this court can simply order dismissal for lack of personal jurisdiction. There are just no allegations in the complaint that are directed to any individual defendant. And I addressed in my opening argument the allegations with respect to paragraph 377 that my friend mentioned in his argument. With respect to the waiver issue, again, we raised personal jurisdiction at the first possible opportunity. And the Halliburton case certainly did not say that a defendant who raises personal jurisdiction over arbitration consents to personal jurisdiction over arbitration. It said the opposite. It said the only reason there was consent there was because of the underlying arbitration agreement that selected a state, but we don't have that here. All right, counsel. Thanks to you both for your helpful presentations this morning. We'll take a case...